UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOANN BACELLI,

        Plaintiff,

vs.                                                      Case No. 8:09-cv-1396-T-27EAJ

MFP, INC. and
ST. JOSEPH'S HOSPITAL, INC.,

        Defendants.
_____/

## ORDER

**BEFORE THE COURT** are the Magistrate Judge's Report and Recommendation (Dkt. 45) and the parties' cross-motions for summary judgment (Dkts. 14, 40, 41). Plaintiff alleges that Defendants violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §§ 559.55 *et seq.*, by demanding immediate payment on a debt while she was in bankruptcy, after the debt's discharge, and while she was represented by an attorney with respect to the debt. As set forth below, the Magistrate Judge's Report and Recommendation is approved and adopted. Plaintiff's Motion for Partial Summary Judgment as to Liability Only and Defendant St. Joseph's Hospital, Inc.'s Motion for Summary Judgment are DENIED. Defendant MFP, Inc.'s Motion for Summary Judgment is GRANTED in part.

*Background*

The facts are largely undisputed. On August 29, 2008, Plaintiff through her attorney filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the Middle District of Florida, Case

1

No. 8:08-bk-13272-CPM. Pretrial Statement, Dkt. 59, ¶ H.4. Plaintiff listed on her Schedule F a debt of $459.15 owed to Defendant St. Joseph's Hospital, Inc. ("St. Joseph's"). (Dkt. 14-3 at 3[1]). The bankruptcy file shows that a notice of Plaintiff's bankruptcy filing was mailed to St. Joseph's at its processing center in Atlanta, Georgia, on September 3, 2008. Dkt. 59, ¶ H.11. On December 12, 2008, Plaintiff was granted a discharge by the bankruptcy court. *Id.* ¶ H.12. The bankruptcy file shows that a notice of Plaintiff's discharge was mailed to St. Joseph's on December 14, 2008. (Dkt. 14-5).

On November 17, 2008. St. Joseph's forwarded Plaintiff's account to Defendant MFP, Inc., d/b/a Financial Credit Services ("MFP"), for collection.[2] St. Joseph's did not inform MFP that Plaintiff had filed for bankruptcy. Nasso Aff. ¶¶ 5, 9. MFP is not listed as a creditor or other party on Plaintiff's bankruptcy mailing matrix. Dkt. 59, ¶ H.9. Prior to June 26, 2009, MFP had no actual notice from the bankruptcy court, from Plaintiff, or from St. Joseph's that Plaintiff had filed for bankruptcy or was represented by an attorney with respect to the debt. *Id.* ¶ H.8.

About November 18, 2008, MFP mailed and Plaintiff received MFP's initial collection letter (the "post-petition MFP collection letter" [Dkt. 5-2]). *Id.* ¶ H.5. About December 18, 2008 and February 18, 2009, respectively, MFP mailed and Plaintiff received MFP's second and third collection letters (together, the "post-discharge MFP collection letters" [Dkts. 5-3, 5-4]). *Id.* ¶¶ 6-7. On June 30, 2009, MFP was informed that Plaintiff had filed bankruptcy and was represented by counsel. Nasso Aff. ¶ 15. At that time, the MFP account notes were updated and the account was closed and returned to St. Joseph's. *Id.*

---

[1] Plaintiff's unopposed request for judicial notice pursuant to Fed. R. Evid. 201 of the bankruptcy filings attached to Plaintiff's motion for summary judgment is granted.

[2] *See* September 28, 2009 Affidavit of Hepsibeth Nasso ("Nasso Aff. [Dkt. 24-2]) ¶¶ 3, 5.

2

About September 11, 2008 and October 8, 2008, respectively, St. Joseph's mailed to Plaintiff and Plaintiff received bills (together, the "post-petition hospital bills" [Dkts. 5-5, 5-6]) for the debt at issue. Dkt. 59, ¶ 9. ¶¶ H.13-14.

### *Standard*

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited

to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

## *Discussion*

The FDCPA provides a civil cause of action against any debt collector who fails to comply with its requirements. *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1352 (11th Cir. 2009) (citing 15 U.S.C. § 1692k(a)).[3] The FDCPA prohibits debt collectors from using any false representation as to the "legal status of any debt." 15 U.S.C. § 1692e(2)(A). "A demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts that money is due, although, because of the automatic stay (11 U.S.C. § 362) or the discharge injunction (11 U.S.C. § 524), it is not." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004) (dicta); *see also Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007) ("Dunning people for their discharged debts" is prohibited by 15 U.S.C. § 1692e(2)(A)); *cf. Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) ("*Turner I*") (reversing summary judgment in favor of debt collector on claim under 15 U.S.C. § 1692e(2)(A) in part because a reasonable jury could conclude debt collector's collection letter implied that the discharged debt was still payable).[4] The FDCPA also prohibits debt collectors from using "unfair or

---

[3] The parties agree (Dkt. 59 ¶ H.2-3) that Plaintiff is a consumer within the meaning of the FDCPA, *see* 15 U.S.C. § 1692a(3), and that the relevant debt was a consumer debt, *see* 15 U.S.C. § 1692a(5).

[4] Following a bench trial and a second remand, the magistrate judge in *Turner* found that the debt collector's letter did not imply to an unsophisticated but reasonable consumer that the debt, which had been discharged in bankruptcy, was still payable. *See Turner v. J.V.D.B. & Assocs., Inc.*, 483 F. Supp. 2d 631, 635 (N.D. Ill. 2007) ("*Turner III*"). Hence the debt collector did not violate 15 U.S.C. § 1692e by sending the letter. *Id.* The magistrate judge did not discuss *Ross*, in which the Seventh Circuit specifically stated that "[d]unning people for their discharged debts" is prohibited by 15 U.S.C. § 1692e(2)(A). 480 F.3d at 495.

unconscionable" debt collection methods, 15 U.S.C. § 1692f,[5] and (with exceptions not relevant here) from communicating with a consumer in connection with the collection of a consumer debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address . . . ." 15 U.S.C. § 1692c(a)(2).

"The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010). However, characterization of the FDCPA as a strict liability statute is not entirely accurate, in part because the FDCPA provides debt collectors with an affirmative defense (the "bona fide error" defense) that "insulates them from liability even when they have failed to comply with the Act's requirements." *Edwards*, 584 F.3d at 1352 (citing *Johnson v. Riddle*, 443 F.3d 723, 727 (10th Cir. 2006)). Pursuant to the bona fide error defense, a debt collector cannot be held liable for any violation of the statute

> if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

A debt collector asserting the bona fide error defense must show by a preponderance of the evidence that its violation of the FDCPA "(1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error." *Edwards*, 584

---

[5] In determining whether a debt collector's communication violates Sections 1692e or 1692f, courts in the Eleventh Circuit employ the "least-sophisticated consumer" standard. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193, 1201 (11th Cir. 2010).

F.3d at 1352-53 (citing *Johnson*, 443 F.3d at 727-28).[6] Section 1692k(c) "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 539 (7th Cir. 2005). However, the required procedures must be reasonably adapted to avoid the specific error at issue. *Johnson*, 443 F.3d at 729. Moreover, "the procedures . . . must be explained, along with the manner in which they were adapted to avoid the error." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008). A conclusory declaration that the debt collector maintained procedures to avoid error is insufficient. *Id.*

The FCCPA provides that a debtor may bring a civil action against any person who violates its provisions. Fla. Stat. § 559.77.[7] The FCCPA prohibits any person, in collecting consumer debts, from "claim[ing], attempt[ing], or threaten[ing] to enforce a debt when such person *knows* that the debt is not legitimate or assert[ing] the existence of some other legal right when such person *knows* that the right does not exist." Fla. Stat. § 559.72(9) (emphasis added). As the emphasis indicates, this provision "requires actual knowledge of the impropriety or overreach of a claim." *In re Cooper*, 253 B.R. 286, 290 (Bankr. N.D. Fla. 2000) (citing *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1363 (S.D. Fla. 2000)). Additionally, like the FDCPA, *see* 15 U.S.C. § 1692c(a)(2), the FCCPA generally prohibits persons from communicating with a debtor "if the person *knows* that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily

---

[6] To establish the bona fide error defense, a debt collector need only show that the FDCPA violation was unintentional, not that its actions were unintentional. *See Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005).

[7] The FCCPA differs from the FDCPA, in part, in that it prohibits acts of "persons" and, accordingly, is not limited to "debt collectors." *Schauer v. Gen. Motors Acceptance Corp.*, 819 So. 2d 809, 811-12 (Fla. 4th DCA 2002). St. Joseph's admits that it is a "person" within the meaning of the FCCPA. (Dkt. 40 at 2). Moreover, the parties agree (Dkt. 59 ¶¶ H2-3) that Plaintiff is a consumer or debtor within the meaning of the FCCPA, *see* Fla. Stat. § 559.55(2), and that the relevant debt was a consumer debt within the meaning Fla. Stat. § 559.55(1).

ascertain, such attorney's name and address . . . ." Fla. Stat. § 559.72(18) (emphasis added). The FCPA also prohibits "willfully engag[ing] in . . . conduct which can reasonably be expected to abuse or harass the debtor . . . ." Fla. Stat. § 559.72(7). The FCCPA contains a bona fide error defense substantially similar to 15 U.S.C. § 1692k(c). *See* Fla. Stat. § 559.77(3). Finally, the FCCPA provides that in construing its provisions, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." Fla. Stat. § 559.77(5).

*FDCPA Claims Against MFP*

Plaintiff alleges that MFP violated 15 U.S.C. §§ 1692e(2)(A) and 1692f(1) by sending Plaintiff the post-petition MFP collection letter while she was protected by the bankruptcy stay, *see* 11 U.S.C. § 362(a), and by sending the post-discharge MFP collection letters while she was protected by the discharge injunction, *see* 11 U.S.C. § 524 (providing that a discharge under the Bankruptcy Code operates as an injunction against collecting a discharged debt as a personal liability of the debtor). Additionally, Plaintiff contends that MFP violated 15 U.S.C. § 1692c(a)(2) by sending all three collection letters while she was represented by an attorney.

MFP contends that Plaintiff's claim under 15 U.S.C. § 1692c(a)(2) fails because the provision prohibits direct communication only "if the debt collector *knows* the consumer is represented by an attorney with respect to [the relevant] debt." (emphasis added). The undisputed facts demonstrate that MFP had no actual knowledge that Plaintiff was represented by an attorney when it sent the collection letters.

In response, Plaintiff appears to argue that St. Joseph's knowledge of Plaintiff's representation should be imputed to MFP under a "special exception" to the general rule that

7

knowledge of the principal is not imputed to the agent.[8] However, as Plaintiff notes, the only courts of appeals to have addressed this argument have squarely rejected it. *See Schmitt v. FMA Alliance*, 398 F.3d 995, 997-98 (8th Cir. 2005); *Randolph*, 368 F.3d at 729-30. The Court agrees with these well-reasoned decisions and the Magistrate Judge that no basis exists for departing from the plain language of the statute or imputing a creditor's knowledge to a debtor. Accordingly, MFP is entitled to summary judgment on Plaintiff's claim against MFP under 15 U.S.C. § 1692c(a)(2).

MFP further argues that it is entitled to the bona fide error defense on all of Plaintiff's FDCPA claims because (a) it relied on information regarding bankruptcies provided by St. Joseph's and (b) it maintains reasonable procedures to ensure that collection activity ceases upon notice of a bankruptcy and that direct contact with the debtor ceases upon notice of attorney representation. Specifically, Nasso avers that MFP's employees are trained (a) upon learning of a bankruptcy, to note the fact in the collection notes, cease collections activities on the account, and return the account to the creditor and (b) upon learning that a consumer is represented by counsel, to note the fact in the collection notes along with the attorney's contact information and to cease direct contact with the consumer. Nasso Aff. ¶¶ 12-14.

The FDCPA generally imposes no duty on a debt collector to independently verify information provided by the creditor. *See Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) (debt collector that had reasonable policies and procedures in place to avoid sending collection letters to debtors in bankruptcy was not required to independently search bankruptcy records or obtain credit reports to assure that accounts forwarded for collection were not in bankruptcy); *Smith v. Transworld*

---

[8] In the pretrial statement, however, the parties list among the agreed principles of law the proposition that "[a]ctual knowledge cannot be imputed from the original creditor, St. Joseph's Hospital, to MFP, Inc. as a matter of law." Dkt. 59, ¶ I.4.

*Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (debt collector was not liable for attempting to collect amount greater than consumer owed where debt collector reasonably relied on incorrect amount creditor printed on debt collector's referral form, which instructed creditors to claim only amounts legally due and owing); *Ross*, 480 F.3d at 497-98.

However, the bona fide error defense "does not protect a debt collector whose reliance on a creditor's representation is unreasonable." *Reichert*, 531 F.3d at 1006 (citing *Clark v. Capital Credit & Collection Serv., Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006) (debt collector who attempted to collect disputed medical debt was not entitled to summary judgment on bona fide error defense because consumers presented evidence indicating that debt collector knew of serious bookkeeping difficulties and billing problems in doctor's office, and debt collector presented no evidence that its reliance on the doctor's information was reasonable or that it maintained procedures to avoid errors). The bona error defense requires a defendant to show that it maintains procedures reasonably adapted to avoid error. *Reichert*, 531 F.3d at 1006.

In *Hyman*, the debt collector and its client-creditor, a bank, had an informal "understanding" that the bank would not refer accounts for collection if the accounts were in bankruptcy. 362 F.3d at 967. To show the effectiveness of the understanding, the debt collector presented evidence that errors of this kind occurred very infrequently, less than .01% of the time. *Id.* Additionally, there was testimony that, if the bank received information that an account previously referred was in bankruptcy, the bank would promptly notify the debt collector. *Id.* Finally, the evidence showed that, if the debt collector received information that an account previously referred was in bankruptcy, the debt collector immediately ceased collection efforts. Based on this testimony, the relatively innocuous nature of the violation, and the slight harm it occasioned, the Seventh Circuit affirmed the district court's conclusion that the debt collector's procedures were reasonable and agreed that

the debt collector debt collector was not required to independently confirm that accounts referred by the bank were not in bankruptcy before sending collection letters. *Id.* at 967–68.[9] In short, *Hyman* holds that (a) an understanding with creditor-clients that they will not knowingly refer accounts subject to a bankruptcy filing and will notify the debt collector if they afterwards discover the fact together with (b) prompt cessation of collection efforts upon notification of a bankruptcy filing are procedures reasonably adapted to avoid errors of this kind. *See Ross*, 480 F.3d at 497.

In *Alexander v. Unlimited Progress Corp.*, No. 02 C 2063, 2004 WL 2384645, at * 5 (N.D. Ill. Oct. 20, 2004), the district court construed *Randolph* as requiring procedures to avoid mistakes *before* they occurred. In response to the plaintiff's motion for summary judgment, the only evidence the debt collector presented that it took steps to avoid mistakes was an interrogatory response stating that the debt collector "notifies creditors that it does not handle bankruptcy accounts for collection." *Id.* This conclusory assertion did not defeat the plaintiff's motion for summary judgment, in part because the debt collector presented no evidence as to when (before or after collection efforts began) or how the notice was disseminated to ensure it actually reached creditors and no evidence as to the effectiveness of the notice in preventing errors. *Id.*

In *Turner v. J.V.D.B. & Associates, Inc.*, 318 F. Supp. 2d 681, 684 (N.D. Ill. 2004) ("*Turner II*"), the debt collector averred that it relied on its creditor-clients to provide relevant, accurate information on a debtor's account, including whether a debtor had filed for bankruptcy. The district court held that this reliance (even when coupled with procedures to prevent collection efforts after receipt of notice that an account was subject to a bankruptcy filing) was insufficient as a matter of

---

[9] *See also Turner I*, 330 F.3d at 996 (stating that reasonable preventive measures to avoid mistakes could be shown, for example, by evidence of "an agreement with creditor-clients that debts are current and [evidence that] the [collection] letter was sent soon after the assignment)").

law to support the bona fide error defense. *Id.* at 685. The court reasoned that the debt collector's reliance on creditor-clients to provide the information was merely an unfounded assumption, not supported by any fact or any understanding or agreement with the creditor-clients. *Id.* at 686. *Turner II* suggests that, absent at least an informal understanding with creditor-clients that they will not refer for collection accounts in bankruptcy, reliance on them not to do so will generally be unreasonable.

In *Cross v. Risk Management Alternatives, Inc.*, 374 F. Supp. 2d 649, 652 (N.D. Ill. 2005), the district court distinguished *Alexander* and *Turner II* as cases in which "the debt collectors relied *solely* on a presumption that their creditor clients would not send them accounts which were subject to bankruptcy petitions." (emphasis in original). In *Cross*, the debt collector presumed that its clients would not ask it to collect debts that were in bankruptcy. *Id.* at 651. However, the debt collector conducted bankruptcy searches on certain types of accounts (high balances, sub-prime loans, and debts of consumers who its creditor-clients thought might file for bankruptcy), which experience had taught it were most likely to be the subject of bankruptcy petitions. *Id.* at 651-52. Although the account at issue was not of that type (and therefore the debt collector had not conducted a bankruptcy search as to that account), the district court found the procedures sufficient to establish the bona fide error defense. *Id.*

Here, as in *Alexander* and *Turner II*, MFP presents no evidence of an agreement or understanding with St. Joseph's that the latter would not to refer accounts in bankruptcy and no evidence that its reliance on St. Joseph had proved effective in avoiding errors in the past. Indeed, MFP presents no evidence whatsoever to show that its reliance on St. Joseph's was reasonable. Accordingly, MFP is not entitled to summary judgment on the bona fide error defense.

MFP next contends that the Bankruptcy Code "preempts" Plaintiff's FDCPA claims. The

Court disagrees. First, "[o]ne federal statute does not preempt another." *Randolph*, 368 F.3d at 730. Rather, the pertinent question when two federal statutes address the same subject in different ways "is whether one implicitly repeals the other." *Id.* An implied repeal may be found if there exists "an irreconcilable conflict between the statutes or a clearly expressed legislative decision that one replace the other. *Id.* Absent a clearly expressed legislative decision, where two statutes have overlapping remedies, the later statute does not repeal the earlier by implication as long as people can comply with both. *Id.* at 731. In *Randolph,* the Seventh Circuit discussed the matter at length found no irreconcilable conflict between the remedies available under 11 U.S.C. § 362(a) and claims under 15 U.S.C. § 1692c(a)(2) and 1692e(2)(A) based on collection letters violating the automatic stay . The Court agrees.

MFP's reliance on *In re Williams*, 392 B.R. 882 (Bkrtcy. M.D. Fla. 2008), is misplaced. In that case, an unsecured creditor filed a proof of claim in the bankruptcy proceeding based on a debt allegedly barred by the statute of limitations. *Id.* at 884. Instead of filing an objection to the claim in the bankruptcy proceeding, the debtor sued the creditor under the FDCPA and the FCCPA. *Id.* at 884-85. The bankruptcy court agreed with other authorities that a debtor in bankruptcy may not bypass the remedies available under the Bankruptcy Code and instead assert a claim under the FDCPA. *Id.* at 885-86. However, the bankruptcy court expressly distinguished *Randolph, Turner I*, and *Hyman* on the grounds that those cases involved the applicability of the FDCPA to violations of the automatic stay and the discharge injunction, and the court appeared to suggest that preclusion would not apply in those cases, in which "the collection agencies sent letters that violated *both* the Bankruptcy Code and the FDCPA." *Id.* at 886 (emphasis added); *see also In re McMillen*, No. 09-74093, 2010 WL 2025610, at *4 (Bkrtcy. N.D. Ga. 2010) (distinguishing *Randolph* on the ground that sending letters that violate the automatic stay [is] an attempt to collect a debt *outside* the

bankruptcy system") (emphasis in original); *In re Pariseau*, 395 B.R. 492, 494 (Bkrtcy. M.D. Fla.,2008) ("[A]lthough other courts have applied the FDCPA in bankruptcy cases, they have done so only in the very *narrow* context of situations involving the automatic stay or dischargeability.") (emphasis in original) (citing *Hyman* and *Randolph*).

In sum, although there is some authority supporting the proposition that remedies under the Bankruptcy Code are the only recourse against post-bankruptcy debt-collection efforts, *see e.g., Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510-11 (9th Cir. 2002); *cf. Yaghobi v. Robinson*, 145 F. App'x. 697, 698-99 (2d Cir. 2005), those authorities either do not address the arguments advanced in *Randolph* or do not involve FDCPA claims based on a violation of the stay or the discharge injunction.

*FCCPA Claims Against MFP*

Plaintiff alleges that the MFP collection letters also violated Sections 559.72(7), (9) & (18), Florida Statutes. Section 559(9) prohibits any person from claiming, attempting, or threatening to enforce a consumer debt "when such person *knows* that the debt is not legitimate." Fla. Stat. § 559.72(9) (emphasis added). Section 559(9) requires by its terms *actual* knowledge. *In re Cooper*, 253 B.R. at 290; *see also In re Lamb*, 409 B.R. 534, 541 (Bkrtcy. N.D. Fla. 2009); *Pollock v. Bay Area Credit Serv., LLC*, No. 08-61101-Civ, 2009 WL 2475167, at *9 (S.D. Fla. Aug. 13, 2009); *Williams v. Streeps Music Co., Inc.*, 333 So. 2d 65, 67 (Fla. 4th DCA 1976) (striking allegation that a debt collector "should have known" the debt was not legitimate). The undisputed facts demonstrate that MFP did not know that Plaintiff had filed for bankruptcy when it sent the collection letters. Accordingly, MFP is entitled to summary judgment on Plaintiff's claim under Fla. Stat. § 559.72(9).

Similarly, Section 559.72(18) prohibits communicating directly with a debtor only "if the person *knows* that the debtor is represented by an attorney with respect to such debt and has

knowledge of, or can readily ascertain, such attorney's name and address." Fla. Stat. § 559.72(18) (emphasis added). As it is undisputed that MFP did not know that Plaintiff was represented by an attorney when it sent the collection letters, MFP is entitled to summary judgment on Plaintiff's claim under Fla. Stat. § 559.72(18).

As to Section 559.72(7), MFP contends that, as MFP admittedly lacked knowledge of Plaintiff's bankruptcy proceeding, no evidence of record supports Plaintiff's allegation that MFP "willfully" engaged in conduct that could reasonably be expected to abuse or harass Plaintiff. *See* Fla. Stat. § 559.72(7); *see also Brandt v. I.C. Sys., Inc.*, No. 8:09-cv-126-T-26MAP, 2010 WL 582051, at *2 (M.D. Fla. Feb. 19, 2010) (suggesting that Section 559.72(7) "requires an allegation of knowledge or intent by the debt collector in order to state a cause of action"). The Court agrees.

Plaintiff asserts that Section 559.72(7) requires neither knowledge nor intent. However, Plaintiff neither explains how to square this construction with the statutory language requiring "willful" conduct nor cites any authority supporting her contention. Instead, Plaintiff relies on the general proposition[10] that the FCCPA is a strict liability statute–except where it isn't.[11] As the plain language of the statute requires willful conduct, MFP is entitled to summary judgment on Plaintiff's claim under Fla. Stat. § 559.72(7).

As MFP is entitled to summary judgment as to all of Plaintiff's FCCPA claims on other grounds, the Court need not address MFP's contention that Plaintiff's FCCPA claims are preempted by the United States Bankruptcy Code.

---

[10] *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 896 So. 2d 773 (Fla. 1st DCA 2004), *rev'd*, 950 So. 2d 380 (Fla. 2007), does not support that proposition. The decision does not address whether the statute requires knowledge or intent and the case apparently involved a claim under Section 559.72(9), which does impose such a requirement. *See* Fla. Stat. § 559.72(9).

[11] *See* Dkt. 42 at 8 ("The plain language of sections 559.72(9) and (18) require knowledge . . . .").

*FCCPA Claims Against St. Joseph's*

Plaintiff alleges that by sending Plaintiff the two post-petition hospital bills, St. Joseph's violated Sections 559.72(7), (9) & (18), Florida Statutes. Apparently relying on an agency theory, Plaintiff also alleges that St. Joseph's violated Sections 559.72(7), (9) & (18) by causing MFP to send its post-petition and post-discharge collection letters.

St. Joseph's contends that it cannot be held liable because it lacked actual knowledge of the bankruptcy action and Plaintiff's representation by counsel. In support of this contention, Dawn Cox, Auto Liability Coordinator for BayCare Health System (which conducts billing for St. Joseph's), avers generally that any post-petition hospital bills sent to Plaintiff "were sent due to a lack of knowledge of any representation of [Plaintiff] by counsel, and without knowledge of any pending or final bankruptcy action."[12] However, St. Joseph's admits that a notice of Plaintiff's bankruptcy filing was mailed to St. Joseph's on September 3, 2008. Dkt. 59, ¶ H.11. Moreover, Plaintiff presents evidence that a notice of Plaintiff's discharge was mailed to St. Joseph on December 14, 2008. (Dkt. 14-5). Cox's affidavit does not dispute this evidence, does not state the factual basis for her assertion that St. Joseph's lacked knowledge of the bankruptcy action, and does not even clearly assert that St. Joseph's did lack that knowledge. In short, the record contains substantial evidence that St. Joseph's possessed the requisite knowledge.[13] Additionally, Cox's

---

[12] September 28, 2009 Affidavit of Dawn Cox ("Cox Aff. [Dkt. 40-2]) ¶ 6.

[13] In her objections to the magistrate judge's report, Plaintiff appears to concede the point. *See* Dkt. 46 at 8 (noting, in response to the magistrate judge's statement that Plaintiff does not allege that St. Joseph's had actual knowledge of Plaintiff's representation or Plaintiff's bankruptcy proceeding, that "[t]his is true."). If Plaintiff concedes this point, all claims against St. Joseph's must be dismissed for the same reasons, already discussed, that Plaintiff's FCCPA claims against MFP must be dismissed. However, in her response to St. Joseph's motion for summary judgment, Plaintiff argues (Dkt. 42 at 8) that the evidence that St. Joseph was notified of the bankruptcy proceedings and Plaintiff's representation shows that "St. Joseph's had 'actual knowledge' of [Plaintiff's] bankruptcy." In light of this argument, the Court does not believe that Plaintiff intended to concede the point in her objections to the magistrate judge's report.

conclusory assertion that the post-petition and post-discharge letters were "the result of bone fide error, notwithstanding St. Joseph's Hospital and BayCare's maintenance of procedures reasonably adapted to avoid such errors," Cox. Aff. ¶ 8, does not support the bona fide error defense. *See Reichert,* 531 F.3d at 1007 ("If the bona fide error defense is to have any meaning . . . a showing of 'procedures reasonably adapted to avoid any such error' must require more than a mere assertion to that effect. The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error."). Accordingly, St. Joseph's is not entitled to summary judgment.

*Plaintiff's Motion for Summary Judgment*

Plaintiff objects that the Magistrate Judge recommended denial of Plaintiff's motion for summary judgment based in part on genuine issues of fact as to Defendants' entitlement to the bona fide error defense. Plaintiff complains that the Magistrate Judge disregarded the fact that she expressly sought summary judgment "as to liability alone, without consideration of any bona fide error defense pled in this action by any defendant." (Dkt. 46 at 3). However, a defendant's "liability" cannot be established by a motion for summary judgment that expressly declines to challenge the non-movant's entitlement to an affirmative defense asserted in the pleadings.[14] The Court recognizes that Plaintiff's motion can be construed as seeking an adjudication as to specific elements of Plaintiff's claims, rather than as to Defendants' liability. However, as motions seeking adjudication of issues that do not resolve a party's liability on a claim are disfavored and arguably

---

[14] *See* 15 U.S.C. § 1692k(c) ("A debt collector *may not be held liable* in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.") (emphasis added); Fla. Stat. § 559.77(3).

not even permitted under Rule 56,[15] the Magistrate Judge did not err in construing literally Plaintiff's request for summary judgment as to "liability." Otherwise, Plaintiff's objections either are unfounded or require no different resolution of Plaintiff's motion.[16]

### *Conclusion*

The Magistrate Judge's Report and Recommendation (Dkt. 45) is adopted, confirmed, and approved and is made a part of this order for all purposes, including appellate review.

Plaintiff's Motion for Partial Summary Judgment as to Liability Only (Dkt. 14) is **DENIED**.

Defendant St. Joseph's Hospital, Inc.'s Motion for Summary Judgment (Dkt. 40) is **DENIED**.

Defendant MFP, Inc.'s Motion for Summary Judgment (Dkt. 41) is **GRANTED** in part. Plaintiff's claims against MFP under 15 U.S.C. § 1692c(a)(2) and the FCCPA are **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in chambers this 28th day of July, 2010.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record

---

[15] *See Warner v. United States*, 698 F. Supp. 877, 878-79 (S.D. Fla. 1988) (noting that "a party may not make an independent Rule 56(d) motion" for a finding of fact on an issue that does not dispose of an entire claim); *Capitol Records, Inc. v. Progress Record Distrib., Inc.*, 106 F.R.D. 25, 28-30 (N.D. Ill. 1985) (holding that a motion for partial summary judgment "on less than a single claim" is not permitted under Rule 56).

[16] For example, Plaintiff objects that the Magistrate Judge's discussion of the applicability of the FDCPA to St. Joseph is irrelevant because Plaintiff asserts no claim against St. Joseph's under the FDCPA.